UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HERMAN NIXON JR. | * | CIVIL ACTION |
| VERSUS | * | NO. 20-2934 |
| PETIE NEAL ET AL. | * | SECTION "L" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Herman Nixon Jr. filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against Defendants Petie Neal, Richard Neal (Medical Staff also known as Petie Neal), LaSalle Management, Catahoula Correctional Center, Terrebonne Parish Criminal Justice Complex ("TPCJC"), LaSalle Corrections Inmate Transport, and the Terrebonne Parish Medical Staff. ECF Nos. 4, 4-6.

These matters were referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to Local Rule 73.2(A) and 28 U.S.C. § 636(b)(1)(B) and (C), including statutory frivolousness review under 28 U.S.C. § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). Upon review of the record, I have determined that these matters can be resolved without further hearings.

**I.     BACKGROUND**

   **A.  Allegations in the Complaint and § 1983 Fact Statement**

Plaintiff Herman Nixon Jr. is incarcerated at the TPCJC. ECF No. 4-1, at 3. During the October 12, 2020 return trip after a hurricane evacuation, Plaintiff was moved to the Catahoula Correctional Center, which is managed by LaSalle Management Company. *Id.* at 5; ECF No. 12, at 1. On the return trip to TPCJC while in a prison transport van convoy, several vans (including

1

Plaintiff's) were involved in a motor vehicle accident. Plaintiff claims that every vehicle in the van convoy was driving recklessly before a multi-vehicle accident. ECF No. 12, at 1.

Plaintiff contends that he was not treated for injuries at the scene nor sent to a hospital. ECF No. 4-1, at 5-6; ECF No. 12, at 2. Rather, Plaintiff left the scene and returned to TPCJC where, after a couple of hours, he was seen by medical staff at TPCJC, with some inmates sent to the hospital and others sent back to their cells. ECF No. 12, at 2. He contends that he should have been checked at the scene and brought to the hospital for proper testing. *Id*. He seeks damages from LaSalle Management for hiring Catahoula Parish, against Catahoula Parish for having a driver who was not properly licensed, and against TPCJC and its medical staff for the improper handling and treatment of his injuries,. ECF No. 4-1, at 5-6.

B. *Spears* **Hearing Testimony**

On January 14, 2021, I conducted a telephone conference in this matter. Participating were plaintiff, *pro se*, Brian Marceaux (counsel for Terrebonne Parish Criminal Justice Complex and Terrebonne Parish Criminal Justice Complex Medical Staff), William Dodd (counsel for Terrebonne Sheriff's Office), and Stephen Gieger (counsel for Lasalle Management Company). Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny. ECF No. 16. The conference was electronically recorded.

During the *Spears* hearing, Plaintiff elaborated on the allegations in his Complaint. He indicated that, on October 12, 2020, he was being transported in a shuttle bus even though he had recently had surgery, and was not seat-belted. His feet were shackled and he had zip ties on his hands. Plaintiff could not remember the name of the driver, but testified that the driver was paying attention to his phone and not the highway. Plaintiff saw the lights ahead of him, and then saw the

driver look up and slam on his brakes. They skidded, hit the van in front of them and then the van behind them hit them. Plaintiff testified that the driver could have avoided the accident had he been paying attention to the road. He also explained that he injured his left side in the October 12, 2020 accident at issue as opposed to this right side, which was already damaged from an earlier October 1, 2020 accident for which he had already received treatment.

Plaintiff testified that, after the impact of the accident, an inmate returning from the bathroom fell over Plaintiff on his left side, and he had a sharp pain down his left leg and shoulder. The impact caused him to hit his left leg on the seat to his right and he sustained an abrasion on his leg and he has numbness in his leg. Plaintiff stated that he has discussed these issues with medical professionals. After a November 19, 2020 fall in the shower, he had x-rays taken. Plaintiff contends that, after the accident, he should have been transported to the hospital from the accident to receive treatment for his pain and not subjected to the 2-hour drive back to Terrebonne Parish before receiving pain medications. Plaintiff states that he continues to have pain, and he submits requests for medication for pain. His pain medication regime ended approximately three days before the *Spears* hearing, and he had not submitted a new request for pain medications. Plaintiff also testified that, after filing this proceeding, he has not been able to get medical request forms.

### C. **Plaintiff's Medical Records**

By order dated December 9, 2020, this Court ordered the TPCJC to provide both the court and Plaintiff with a copy of his medical records. ECF No. 11. During the *Spears* conference, Plaintiff confirmed that he received the copy of his medical records. ECF No. 18.

Plaintiff's medical records reflect that he was involved in a motor vehicle accident on October 1, 2020, prior to arrival at TPCJC on October 6, 2020. As a result of that accident, Plaintiff sustained multiple fractures to his right femur and cervical spine for which he was

3

receiving continued treatment and follow-up care after arrival to TPCJC.  See, e.g., ECF No. 18, TPCJC 0084, 102; see also 0029-37 (November 10, 2020 UMC-NO follow-up visit) and 0041-50 (October 26, 2020 UMC-NO follow-up visit).  Also, after a fall in the shower, Plaintiff also received emergency treatment which included x-rays.  *Id.* 007-16 & 0019-24 (November 19, 2020 Ochsner-Chabert ER visit).

In addition to these hospital visits, TPCJC medical notes reflect the following additional medical interactions after the October 12, 2020 accident at issue and through delivery of the medical records on December 22, 2020:

- Medical Department Note of October 12, 2020 discussing motor vehicle accident of same date.  *Id*. at 0005; *see also id*. at 0080 (separate note of same date regarding motor vehicle accident at issue).

- Medical Department Note dated October 19, 2020 for wound care.  *Id.* at 0076.

- Medical Department Note dated October 20, 2020 reflecting suture removal.  *Id.* at 0071.

- Medical Department Note dated October 20, 2020 complaining of pain, with medical staff note regarding medication for pain.  *Id*. at 0072; *see also id.* at 73 (complaint of same date with nurse's and doctor's note).

- Medical Attention Request dated October 31, 2020 asking to see eye doctor and for pain medication from hitting hand on wall, with medical staff response.  *Id.* at 0068.

- Medical Attention Request dated November 7, 2020 complaining of pain and swelling from accident prior to incarceration with medical staff response.  *Id.* at 0052.

- Medical Department Note dated November 17-18, 2020 regarding complaint of pain with discharge from right knee.  *Id.* at 0028.

- Medical Department Note by nurse and doctor dated November 2020 discussing November 19, 2020 fall in shower and November 19, 2020 ER visit and earlier November 10, 2020 follow-up visit.  *Id.* at 0004; *see also id.* 0025 (11/19/20 Medical Department note); 0026 (11/19/20 Request for Medical Treatment), 0027 (11/19/20 Medical Encounter note).

- Medical Attention Request on December 3, 2020 for left leg injured in wreck and lower back requesting MRI and to see a specialist; medical staff resumed Ibuprofen and noted

4

> follow-up orthopedic appointment already scheduled for December 29, 2020. *Id.* at 0006.
>
> - Medical Attention Request on December 10, 2020 complaining of leg numbness when sleeping on side, seen by medical staff reflected in undated note. *Id.* at 003.
>
> - Medical Attention Request on December 18, 2020 complaining of numbness when sleeping on side, seen by medical staff on December 18, 2020. *Id.* at 0002.

Plaintiff's medical records also reflect he received Ibuprofen from October 1-20, 2020 and Percocet from October 8-19. ECF No. 18, at TPCJC 0074-75; 0017-18. Thus, according to Plaintiff's medical records, he has had at least 11 medical interactions at TPCJC since the October 12, 2020 accident plus three hospital visits which included x-rays on November 19, 2020, with an additional follow-up consultation scheduled for December 2020. *Id.* at 0029 (note indicating follow-up for December 22, 2020); 0019 (handwritten note indicating appointment already scheduled).

## II. LEGAL STANDARDS

### A. Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[1] A prisoner's *in forma pauperis* complaint that fails to state a claim may be dismissed *sua sponte* at any time if the court determines that the complaint is frivolous or malicious.[2] A claim is frivolous if it "lacks an arguable basis in law or fact."[3] A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal

---

[1] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).
[2] 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); 42 U.S.C. § 1997e(c)(1); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).
[3] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

interest which clearly does not exist."[4] A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[5] A court may not dismiss a claim simply because the facts are "unlikely."[6]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[7] In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim which is dismissed under one rule does not "invariably fall afoul" of the other.[8] If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[9] "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[10]

**B. <u>The *Spears* Hearing</u>**

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[11] The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges

---

[4] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).
[5] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).
[6] *Id.*
[7] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[8] *Moore*, 976 F. 2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d) (current version at 28 U.S.C. § 1915(e))).
[9] *Id.*
[10] *Id.*
[11] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).

occurred and the legal basis of the claims.[12] "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[13] The information elicited at such an evidentiary hearing is in the nature of an amended complaint or more definite statement under Rule 12(e).[14] These testimony from the Spears hearing will supersede the allegations of the plaintiff's complaint.[15] "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[16]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely on documents as additional evidence if they are properly identified, authentic and reliable.[17] "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a *Spears* hearing."[18] Medical records of sick calls, examinations, diagnoses, and medications may, however, rebut allegations of deliberate indifference.[19]

## III. LAW AND ANALYSIS

### A. Required Elements of § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

---

[12] *Id.*
[13] *Davis*, 157 F.3d at 1005–06.
[14] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).
[15] *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).
[16] *Spears*, 766 F.2d at 182.
[17] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992); *Wilson*, 926 F.2d at 482).
[18] *Id.*
[19] *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Bejaran v. Cruz*, 79 F. App'x 73, 74 (5th Cir. 2003))).

7

secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[20]

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[21]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[22] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[23] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[24] In other words, a plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;
(2) that occurred under color of state law; and
(3) was caused by a state actor.[25]

In this case, Plaintiff's complaint, as expounded by his *Spears* testimony explaining the factual basis of his claims, should be dismissed with prejudice under 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1).[26] His allegations fail to establish a

---

[20] 42 U.S.C. § 1983.
[21] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).
[22] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[23] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).
[24] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).
[25] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[26] The Prison Litigation Reform Act requires a plaintiff to exhaust administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002) (stating exhaustion of administrative remedies is now required for all actions brought with respect to prison conditions whether under § 1983 or other federal law); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (holding that an inmate must exhaust available administrative remedies even if administrative remedy does not provide requested relief). Although it Plaintiff may have failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a), that is an affirmative defense for which defendants bear the burden. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007). The court may only "sua sponte, 'dismiss a case

cognizable § 1983 claim of violation of constitutional rights, even under the broadest reading of his claims.[27]

### B. The Named Defendants

Section 1983 imposes liability on any "person" who violates someone's constitutional rights under color of law.[28] Plaintiff has named eight defendants: Petie Neal (Medical Staff), LaSalle Management, Catahoula Corrections, Catahoula Corrections Inmate Transport, LaSalle Corrections Inmate Transport, Terrebonne Parish Criminal Justice Complex and Richard Neal (Medical Staff also known as Petie Neal).

The Fifth Circuit has recognized that a private prison management company, like LaSalle Management, may be liable under § 1983.[29] Some of the other defendants, however, are not proper defendants. An entity's capacity to be sued is determined by reference to the law of the state in which the district court sits.[30] To possess such a capacity under Louisiana law, an entity must qualify as a "juridical person" as defined by the Louisiana Civil Code. In Louisiana, a juridical person is "an entity to which the law attributes personality, such as a corporation or partnership."[31]

In Louisiana, the responsibility for parish jails is divided, with the parish responsible for the jail's physical maintenance (La. Rev. Stat. § 15:702), and the sheriff charged with the duty to administer and operate the jail (La. Rev. Stat. § 15:704). The office of sheriff is a constitutionally created office in Louisiana, existing separately from the parish government.[32] Thus, in Louisiana,

---

prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust.'" *Hicks v. Garcia*, 372 F. App'x 557, 557–58 (5th Cir. 2010).

[27] The court must "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'" *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

[28] 42 U.S.C. § 1983; *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 65 (1989).

[29] *See, e.g., Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460-61 (5th Cir. 2003).

[30] Fed. R. Civ. P. 17(b).

[31] La. Civ. Code art. 24.

[32] La. Const. art. 5 § 27; *see Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. App. 2d Cir. 1991) (holding that the parish could not be liable for injuries attributed to the sheriff).

9

jail facilities are not "legally empowered to do" anything independent of either parish officials or the parish sheriff.[33] Consequently, "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term."[34] Likewise, Plaintiff's effort to pursue a claim against the transport departments of both jail facilities is improper. A § 1983 action must be filed against an actual identified person or entity, not a department.[35]

In addition to lacking the capacity to be sued, as required by Fed. R. Civ. P. 17(b), prisons[36] or its departments[37] are improper defendants in a § 1983 case because federal courts have recognized that a jail or prison facility is not a "person" within the meaning of § 1983. The prisons are buildings, not entities that can be sued.[38] Accordingly, Plaintiff's claims against Catahoula Corrections, the Terrebonne Parish Criminal Justice Complex, and their inmate transport

---

[33] *Cf. Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So. 2d 341, 347 (La. 1994).

[34] *Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. 2008) (citations omitted).

[35] *See Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009) (citing *August v. Gusman*, No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008); *Staritz v. Valdez*, No. 3-06-CV-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007)); *Allen v. Gusman*, No. 05-1633, 2006 WL 286007, at *3 n.8 (E.D. La. Feb. 2, 2006) ("Medical Staff" is not a juridical entity capable of being sued;the specific medical personnel who allegedly violated plaintiff's constitutional rights must be named).

[36] *See Wetzel v. St. Tammany Par. Jail*, 610 F. Supp. 2d 545, 548 (E.D. La. 2009) (citing *Cullen v. DuPage Ct.y*, No. 99-1296, 1999 WL 1212570 at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester Cty.Corr. Facility Admin.*, No. 97-420, 1997 WL 659100 at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook Cty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw Cty. Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982)); *see also Douglas*, 567 F. Supp. 2d at 892 (citing *U.S. ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3d Cir. 1973)).

[37] *Christmas v. Avoyelles Corr. Ctr.*, No. 1:13-CV-02595, 2015 WL 4092779, at *5 n.5 (W.D. La. July 6, 2015) (stating "medical staff" is not a "person" within the meaning of § 1983); *Horton v. Bay St. Louis Police Dep't*, No. 108CV1505HSOJMR, 2009 WL 6476770, at *1 (S.D. Miss. Dec. 18, 2009), R.&R. adopted, No. 1:08CV1505HSO-JMR, 2010 WL 1991550 (S.D. Miss. May 17, 2010) (stating "Medical Staff" is not "person" subject to suit within the meaning of § 1983) (citing *Irvin v. Borough of Darby*, 937 F. Supp. 446, 450 (E.D.Pa.1996) (holding that municipal departments are not "persons" under § 1983 since they are merely an arm of the local municipality); *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 825–26 (D.N.J.1993) (stating, by extensive string citation, that courts unanimously agree that a police department is not a proper defendant in a § 1983 action)).

[38] *See Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also Kerr v. Orleans Par. Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174, *3 (E.D. La. Aug, 10, 2015).

departments must be dismissed. The Court further notes that, for the reasons set forth in Section C *infra*, it is unnecessary to allow plaintiff an additional opportunity to amend the complaint to add proper defendants because it is evident that his underlying claims would be subject to dismissal even if proper defendants were named.

### C. Negligence Is Insufficient to Establish a § 1983 Claim

The law is well-established that mere negligence does not amount to a denial of a constitutional right:[39] "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."[40] For that reason, in a number of contexts, courts have determined that allegations amounting to mere negligence cannot support a § 1983 claim.[41] Rather, in a case like this, to establish a claim under § 1983, a plaintiff must show that the defendant was deliberately indifferent to his safety or serious medical needs under either the Eighth or Fourteenth Amendments.[42]

The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees.[43] The proper analysis of each category of claims is the same, as our "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners."[44] A claim is further classified according to whether it concerns a "condition of confinement" or an "episodic

---

[39] *See Daniels v. Williams*, 474 U.S. 327, 329-30 (1986).
[40] *Daniels*, 474 U.S. at 328; *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).
[41] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); *Hare v. City of Corinth*, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (en banc) (negligence insufficient to support failure to protect claim under § 1983); *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (negligence cannot support § 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); *Doe v. Taylor Indep. Sch. Dist.*, 975 F.2d 137, 142 (5th Cir. 1992) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution."), *vacated on other grounds*, 15 F.3d 443 (5th Cir. 1994).
[42] *Baugham v. Hickman*, 935 F.3d 302 (5th Cir. 2019).
[43] *See Hare*, 74 F.3d at 639.
[44] *Garza*, 922 F.3d at 634 (citing *Hare*, 74 F.3d at 643-44).

11

act or omission."[45] State prisoners must be subject to humane conditions of confinement, and the conditions "must not involve the wanton and unnecessary infliction of pain."[46] An injury must be "objectively sufficiently serious," and the state official must have been deliberately indifferent to the prisoner's health and safety to state a claim.[47] For episodic acts or omissions claims, the court employs different standards depending on whether the liability of the individual defendant or the municipal defendant is at issue.[48] Both standards require the plaintiff to establish that the official(s) acted with subjective deliberate indifference.[49] Municipal as opposed to individual liability has the additional requirement that the "violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference."[50]

The en banc Fifth Circuit clarified the required mental state for subjective deliberate indifference: "(1) 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) 'he must also draw the inference.'"[51] Thus, the official is liable when he ignores a danger to an inmate after he has been made fully aware of it.[52] Subjective deliberate indifference "is an extremely high standard to meet."[53]

1. **The Van Ride**

Plaintiff's complaint, as expounded by his *Spears* testimony, is that the defendants were deliberately indifferent to his safety by transporting him without affixing his seatbelt in a van

---

[45] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (citation omitted).
[46] *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The "official conduct must be 'wanton,' which is defined to mean 'reckless.'" *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted).
[47] *Palmer*, 193 F.3d at 352 (quoting *Farmer*, 511 U.S. at 834).
[48] *Id.* at 353.
[49] *Id.* (citation omitted).
[50] *Garza*, 922 F.3d at 634 (citation omitted).
[51] *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837); *see also Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).
[52] *Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989).
[53] *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

convey with reckless drivers.

The Fifth Circuit analyzes claims regarding constitutional violations during inmate transportation of a convicted prisoner under the Eighth Amendment.[54] Again, the Fourteenth Amendment would apply to claims by a pretrial detainee, though the deliberate-indifference analysis would be the same under either amendment.[55] To the extent Plaintiff asserts a claim of negligence relating to the accident, claims arising from negligent acts do not give rise to relief under § 1983. Rather, Plaintiff must establish that the defendants acted with deliberate indifference to his safety.

The Fifth Circuit and district courts within the circuit have repeatedly held that the mere failure to provide seatbelts to inmates during transport does not, without more, amount to deliberate indifference.[56] Nor does the occurrence of an accident alone, without more, demonstrate a subjective belief on the part of the defendants that the plaintiff was being placed at substantial risk of serious harm.[57] When, however, a plaintiff goes beyond simply asserting the need for an extra measure of safety against the possibility of harm, and also asserts additional allegations that

---

[54] *Rogers v. Boatright*, 709 F.3d 403, 407-08 (5th Cir. 2013).
[55] *See Hare*, 74 F.3d at 647-48.
[56] *See, e.g., Baughman v. Hickman*, 935 F.3d 302, 307-08 (5th Cir. 2019) (granting summary judgment on § 1983 claim based on absence of seat belt and allegation that driver was speeding up and down on an expressway, because even if done rapidly, speeding up and down is not evidence of recklessness); *Anderson v. Stephens*, 609 F. App'x 217 (5th Cir. 2015) (affirming dismissal of § 1983 claim arising from traffic accident and alleging lack of seatbelt as frivolous and for failure to state a claim); *Crumbliss v. Darden*, 469 F. App'x 325 (5th Cir. 2012) (absence of tie-down straps for wheelchair in van insufficient to establish deliberate indifference); *Cooks v. Crain*, 327 F. App'x 493 (5th Cir. 2009) (rejecting prisoner's claim that being transported without seatbelt was so unsafe as to violate his constitutional rights); *Bell v. Norwood*, 325 F. App'x 306 (5th Cir. 2009) (rejecting § 1983 claim based on transport in vehicles without seatbelts); *see also Gray v. Wichita Cty. Sheriff's Dep't*, 19-78-M-BP, 2020 WL 8188198 (N.D. Tx. Dec. 22, 2020) (dismissing § 1983 suit by prisoner, who was not wearing a seatbelt, who was injured during transport when a car ran a red light and collided with the transport van); *Porter v. Willis*, 14-524-BAJ-EWD, 2016 WL 1032303, *3 (M.D. La. Feb. 16, 2016) (dismissing § 1983 claim by prisoner injured during transport to work site when officer made inappropriate turn and caused rear wheels of trailer to jolt into and out of a ditch, resulting in inmates being bounced around on the trailer); *Mercadel v. Corr. Corp. of Am.*, No. 09-CV-0079, 2009 WL 1658027, at *1 (W.D. La. June 12, 2009) (dismissing § 1983 suit by prisoner who fell off the back of a flatbed truck during transport to prison job where truck had no hand or guard rails).
[57] *Crumbliss*, 469 F. App'x at 327.

13

the defendant operated the transport vehicle recklessly, knowing of the danger to the prisoner due to the lack of seatbelts, the § 1983 claim will survive screening.[58]

With regard to Plaintiff's claim based on another driver's lack of a chauffer's license, Louisiana does not appear to require the driver of a seven-passenger prison transport van have a Class D Chauffer's license.[59] Even if it did, Plaintiff makes no allegations that defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed based on the licensure status of one driver and defendants actually drew that inference.

Although Plaintiff alleges that every vehicle in the convoy was driving recklessly (ECF No. 12, at 1), he makes no allegation that defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that defendants actually drew that inference. For instance, Plaintiff makes no allegations that his knew of prior injuries due to prisoners due to lack of seatbelts during transport, that his driver made any statement reflecting an intent to cause injury through reckless driving, or any other facts to establish more than a negligence claim. While Plaintiff's allegations may suffice for a state law tort or negligence

---

[58] *Rogers*, 709 F.3d at 408-09; *see also Miller v. Chapman*, No. 13-367-SDD-RLB, 2014 WL 2949287, *2 (M.D. La. June 30, 2014) ("While Fifth Circuit jurisprudence instructs that an inmate's allegations of being deprived of seatbelts while being transported in restraints alone will not give rise to a constitutional claim, when combined with allegations of reckless driving or a prior pattern of incidents, a viable claim may exist.") (footnotes and citations omitted).

[59] La. Rev. Stat. § 32:408(B)(2)(d) specifies that a Class D chauffeur's license "[p]ermits the operation of all vehicles included in Class "E" plus any single motor vehicle used in commerce to transport passengers or property if the motor vehicle has a gross vehicle weight rating of ten thousand one or more pounds but less than twenty-six thousand one pounds, or any combination of vehicles used in commerce to transport passengers or property if the motor vehicle has a combined gross vehicle weight rating of ten thousand one or more pounds but less than twenty-six thousand one pounds inclusive of a towed unit with a gross vehicle weight rating of more than ten thousand pounds; or any vehicle designed or utilized for the transportation of passengers for hire or fee; and not utilized in the transportation of materials found to be hazardous under the provisions of the Hazardous Materials Transportation Act which requires the vehicle to bear a placard under the provision of Hazardous Materials Regulations (49 CFR Part 172, Subpart F)." Subsection (e) specifies that a Class E personal vehicle license authorizes the driver to operate, in pertinent part, "any single motor vehicle under ten thousand one pounds gross vehicle weight rating . . . or any vehicle which is not within the definition of Group "A", "B", "C", or "D" and not utilized in the transportation of materials found to be hazardous under the provision of the Hazardous Materials Transportation Act which requires the vehicle to bear a placard under provisions of the Hazardous Materials Regulations (49 CFR Part 172, Subpart F)." A transport vehicle for sixteen or more passengers would appear to require a Class C Commercial Driver's License (*id.* § 32:408(B)(2)(c)), but a seven-person transport vehicle such as that involved in this case would not appear to fall into that category.

claim, they are not sufficient to state a claim for civil rights violations cognizable under § 1983. Thus, plaintiff's negligence claim related to acts and/or omissions regarding the transport are legally frivolous argument and/or fail to state a claim for relief based upon violation of his constitutional rights under § 1983.[60]

### 2. Inadequate Medical Care

In *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996), the Fifth Circuit stated:[61]

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.[62]

The Fifth Circuit explained that for the "reasonable relationship" test under *Bell v. Wolfish,* 441 U.S. 520, 539 (1979), to apply, the inmate must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."[63] If the plaintiff is unable to prove either, the incident is

---

[60] 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1).
[61] Before *Hare*, it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979); *Cupit v. Jones*, 835 F.2d 82, 85 (5th Cir. 1987); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1186 (5th Cir. 1990), *abrogated on other grounds as recognized in Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992).
[62] *Hare*, 74 F.3d at 650.
[63] *Id.* at 645.

15

considered an episodic act or omission, subject to the deliberate indifference standard enunciated in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).[64]

In *Estelle*, the Supreme Court held that a prisoner may succeed on a claim for damages under § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.[65] Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . [or acts] repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.[66] Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[67] *Farmer*'s "deliberate indifference" definition[68] discussed in Section III(C) *supra* likewise applies to medical claims.[69]

Plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."[70] In addition, plaintiff must establish that defendant possessed a culpable state of mind.[71] A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

---

[64] *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Bell*, 441 U.S. at 539; *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997); *Hare*, 74 F.3d at 649); *Tamez v. Manthey*, 589 F.3d 764, 769–70 (5th Cir. 2009) (citing *Scott*, 114 F.3d at 53; *Hare*, 74 F.3d at 649 n.4).
[65] *Estelle*, 429 U.S. at 106.
[66] *Id.* at 105–06; *accord Gregg v. Georgia*, 428 U.S. 153, 182–83 (1976); *Tamez*, 589 F.3d at 770; *Hare*, 74 F.3d at 650.
[67] *Estelle*, 429 U.S. at 104–05.
[68] *Farmer*, 511 U.S. at 847 (A prison official is liable "only if he knows that inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it.").
[69] *Reeves*, 27 F.3d at 176.
[70] *Cooper v. Johnson*, 353 F. App'x 965, 967 (5th Cir. 2009) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).
[71] *Farmer*, 511 U.S. at 838 (citing *Wilson*, 501 U.S. at 297).

inference."[72] "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[73]

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].[74]

"'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."[75]

Plaintiff's pleadings, as expanded by his *Spears* testimony, establish that only episodic acts or omissions, as defined in *Hare,* are at issue.[76] Thus, the "deliberate indifference" standard applies, and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. Plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Plaintiff complains that he did not receive medical care at the scene of the accident. ECF No. 12, at 2. A serious medical need is one for which treatment has been recommended by a physician or for which the need is so apparent that even laymen would recognize that care is required.[77] Plaintiff's stated injury would not have been easily identified as one requiring

---

[72] *Id.* at 837; *accord Tamez*, 589 F.3d at 770 (citing *Thompson v. Upshur Ct.y*, 245 F.3d 447, 458–59 (5th Cir. 2001)).
[73] *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).
[74] *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (quoting *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); *accord Tamez*, 589 F.3d at 770.
[75] *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (citing *Farmer*, 511 U.S. at 838-40).
[76] *See Tamez*, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").
[77] *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006) (citation omitted).

additional or immediate care.[78]  Further, he does not allege that medical personnel at the TPCJC refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct that would clearly evince a wanton disregard for any serious medical needs.[79]  Rather, assuming Plaintiff had articulated sufficient facts to establish a serious medical condition, the facts alleged in his Complaint and through his *Spears* testimony, confirmed by the medical records, negate any inference of deliberate indifference.

Plaintiff's statements as well as his medical records reflect that Plaintiff received medical attention on the day of the accident upon return to TPCJC.  *See, e.g.*, ECF No. 12, at 2; No. 18 at 0005, 0080.  Although Plaintiff appears to complain about delay in care, over the three months following the accident, his medical records reflect that he has had at least 14 interactions with medical personnel and received pain medications on numerous occasions.  *See* ECF No. 18.  Further, he does not show that he suffered "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.[80]

Given the substantial and ongoing medical care reflected in Plaintiff's medical records, his dissatisfaction with the timeliness, quality or effectiveness of medical care does not support a finding of deliberate indifference to his serious medical needs as necessary to establish a constitutional violation cognizable under § 1983.[81]  Accordingly, his complaints about his medical

---

[78] *Bell v. Hicks*, No. 12-1979, 2012 WL 3276728, *3 (S.D. Tex. Aug. 9, 2012) (rejecting deliberate indifference to serious health needs based on failure to administer emergency medical help at the scene of the accident where, upon return to prison, inmate was examined by nurse and doctor and given Ibuprofen); *see also Dickson v. Colman*, 569 F.2d 1310, 1311 (5th Cir.1978) (inmate who had full range of motion in his shoulder despite continuing pain from old injury did not have serious medical need).
[79] *Brewster*, 587 F.3d at 770.
[80] *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) *overruled in part on other grounds by Hope v. Peltzer*, 536 U.S. 730, 739 (2002) (citing *Monmouth Cty. v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")).
[81] "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered);

care fail to state a claim of violation of his constitutional rights as necessary to obtain relief under § 1983 because he cannot establish deliberate indifference under the applicable constitutional standard. Thus, plaintiff's claims about his medical care must be dismissed as frivolous and/or for failure to state a claim for relief.[82]

    **D. State Law Negligence Claim**

To the extent Plaintiff seeks to assert a tort or negligence claim under state law, such a claim would involve purely state law questions that are best and ordinarily left to the state court to decide. Because I recommend that Plaintiff's § 1983 claims be dismissed and no possible basis for federal subject matter jurisdiction is otherwise reflected from the face of this complaint, the court has discretion either to decline or exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3). Considering the statutory provisions of § 1367(c) and balancing the relevant factors of judicial economy, convenience, fairness and comity and considering the early stage of this proceeding, this court should decline to exercise jurisdiction over any state law tort or negligence claims and dismiss them without prejudice.

**IV.**    **CONCLUSION**

Dismissal of plaintiff's claim is proper on the grounds of frivolousness and failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2), § 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1). Dismissal without leave to amend is proper because there is no conceivable, non-frivolous federal claim plaintiff could assert against them consistent with the facts alleged in his complaint, as expanded by the information provided at the *Spears* hearing.

---

[82] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

## **RECOMMENDATIONS**

For the foregoing reasons, IT IS RECOMMENDED that Plaintiff's § 1983 claims be DISMISSED WITH PREJUDICE as legally frivolous and/or for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2), § 1915A(a)–(b), and/or 42 U.S.C. § 1997e(c)(1).

IT IS FURTHER RECOMMENDED that Plaintiffs' state law negligence claims be DISMISSED WITHOUT PREJUDICE because the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[83]

New Orleans, Louisiana, this \_\_7th\_\_ day of June, 2021.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[83] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).